UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RANDALL WEDDLE,                    )
                                  )
            Petitioner            )
                                  )
    v.                            )        2:24-cv-00280-LEW
                                  )
ANTHONY DEGNER,                   )
                                  )
            Respondent            )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from state court convictions and sentences for manslaughter and other crimes.[1]  (Petition, ECF No. 1.)  Petitioner challenges the use of a warrantless blood test, argues his attorney provided ineffective assistance, and raises several other issues.  The State asks the Court to dismiss the petition. (Response, ECF No. 7.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

---

[1] Petitioner was found guilty of two counts of manslaughter, two counts of causing death while operating under the influence, on count of causing injury while operating under the influence, on count of aggravating driving to endanger, one count of driving to endanger, and eight counts of violations of commercial motor carrier operator rule.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.    The Motor Vehicle Accident

Around 5:00 p.m. on March 18, 2016, first responders arrived at the scene of a motor vehicle accident on Route 17 in Washington, Maine. The accident involved five vehicles, one of which was engulfed in flames. Multiple occupants needed medical attention and two were dead.  Petitioner, who had been operating a tractor trailer involved in the accident, was trapped in the cab of the truck, which was upside down in a ditch with its load of lumber strewn across the scene.

A law enforcement officer suspected that Petitioner might have been responsible for the accident and decided that it was necessary to preserve evidence by taking a blood sample from Petitioner.  Law enforcement officers did not request a warrant, gather other evidence regarding Petitioner's sobriety, or attempt to obtain Petitioner's consent.  Officers relied upon the state's mandatory blood draw statute in effect at the time, 29-A M.R.S. § 2522(2), which required blood testing of any driver involved in a fatal crash.  At a hospital several hours later, officers interviewed Petitioner and he consented to a second blood draw.

---

[2] The facts recounted below are drawn primarily from state court summaries, *see* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Hensley v. Roden*, 755 F.3d 724, 727 (1st Cir. 2014) (recounting the facts as "derived from the [state court] decision"), as well as the transcripts, dockets, and other filings in the state court record to the extent the filings contained important undisputed facts.

**B.      Criminal Proceedings**

Petitioner was arrested and charged by a criminal complaint in April 2016.  In June 2016, Petitioner was indicted on two counts of manslaughter in violation of 17-A M.R.S. § 203(1)(A), two counts of causing death while operating under the influence in violation of 29-A M.R.S. § 2411(1-A)(D)(1-A), one count of causing injury while operating under the influence in violation of 29-A M.R.S. § 2411(1-A)(D)(1), one count of aggravated driving to endanger in violation of 29-A M.R.S. § 2413(1-A), one count of driving to endanger in violation of 29-A M.R.S. § 2413(1), and eight counts of violations of commercial motor carrier operator rules in violation of 29-A M.R.S. § 558-A(1)(A) (2018), namely, operating with impaired ability or alertness, operating with a detectable presence of alcohol, possession or use of alcohol while on duty, and making false reports in connection with a duty status.  Petitioner filed motions to suppress and exclude evidence; the Superior Court denied the motions.  A jury trial was held from January 23 to January 29, 2018.

At trial, motorists involved in the accident testified that they saw Petitioner's tractor trailer approaching from the opposite direction with the cab of Petitioner's truck in Petitioner's lane, but the end of the trailer tipping over across the center line in their lane. The accident occurred in an area where the speed limit was fifty-five mile per hour.  The State presented data recovered from the truck's electronics, which revealed that the truck was traveling seventy-nine miles per hour twenty-four seconds before the crash and was traveling sixty-nine miles per hour when the truck rolled over.  The state also played recordings of Petitioner's interviews with investigators.  Petitioner admitted that before

driving on the day of the accident, he had been feeling ill and had consumed alcohol and prescription medications, including opiate pain medication. Petitioner told officers that he had tried to avoid an oncoming vehicle that was near or on the center line, which maneuver caused the load of lumber to shift, and he was unable to correct the load shift.

The State also presented the results of the blood tests. The blood taken at the scene of the accident contained .09 grams of alcohol per 100 milliliters of blood and $24 \pm 4$ nanograms of hydrocodone per milliliter of blood; the blood taken at the hospital contained .07 grams of alcohol per 100 milliliters of blood and $23 \pm 4$ nanograms of hydrocodone per milliliter of blood. An expert testified that the levels were generally unsafe for driving. Police found in the truck's cab a shot glass and a bottle of whiskey that was three-quarters full. Two of the first responders who interacted with Petitioner during and just after he was extracted from the cab of the truck testified that they noticed the smell of alcohol from Petitioner.

The jury found Petitioner guilty on all charges. In March 2018, the Superior Court sentenced Petitioner to thirty-years in prison with all but twenty-five years suspended on the manslaughter convictions and lesser concurrent sentences on the other convictions.

Petitioner filed an appeal; in January 2020, the Law Court affirmed. *State v. Weddle*, 2020 ME 12, 224 A.3d 1035. The Law Court concluded that: (1) given more recent cases from the United States Supreme Court, Maine's mandatory blood draw statute was inconsistent with the Fourth Amendment and, therefore, reversal of a 2007 case which had

upheld the state law was warranted,[3] but (2) because the officers had reasonably relied on the 2007 Law Court decision upholding the statute, the good-faith exception to the exclusionary rule permitted the use of the blood test results in Petitioner's trial. *Weddle*, 2020 ME 12 at ¶¶ 30–31, 36–37, 224 A.3d at 1045–47.

## C.    Postconviction Proceedings

In April 2020, Petitioner filed a state court petition for postconviction relief. An evidentiary hearing was held in February 2023. Pursuant to an agreement of the parties, the Superior Court reinstated Petitioner's ability to seek leave to appeal from his sentences. Petitioner filed an application for review from the Sentence Review Panel of the Supreme Judicial Court; leave to appeal was granted in May 2023. In June 2023, the Superior Court otherwise denied the state postconviction petition.

In July 2023, Petitioner sought discretionary appellate review of the Superior Court's decision. In February 2024, the Law Court denied Petitioner's request for a certificate of probable cause to appeal the state postconviction petition. In April 2024, the Sentence Review Panel upheld the sentences. *State v. Weddle*, 2024 ME 26, 314 A.3d 234. Petitioner then filed the § 2254 petition.

### DISCUSSION

## A.    Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the

---

[3] *See Birchfield v. North Dakota*, 579 U.S. 438 (2016); *Missouri v. McNeely*, 569 U.S. 141 (2013); *State v. Cormier*, 2007 ME 112, 928 A.2d 753.

ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review.  28 U.S.C. § 2254(b), (c).[4]  "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted).  In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of

---

[4] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

**(b) (1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

**(A)** the applicant has exhausted the remedies available in the courts of the State; or

**(B) (i)** there is an absence of available State corrective process; or

**(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

**(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[5] A "fundamental miscarriage of justice" has only been recognized in cases of "actual innocence," meaning that the petitioner must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gunter v. Maloney*, 291 F.3d 74, 83 (1st Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Because the constitutional right to counsel does not extend beyond a direct appeal to cover collateral attacks on a conviction, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), ineffective assistance in a state postconviction proceeding generally cannot establish cause to set aside a procedural default. *Coleman*, 501 U.S. at 752–55. In *Martinez*

---

[5] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

*v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to the rule, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16. However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[6]

---

[6] Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* 578 U.S. 113, 117 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[7]

---

[7] Because the Law Court's decisions are the final state court adjudications on the merits of each claim, the decisions under review in this case are the Law Court's orders affirming the decisions of the trial court. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's postconviction order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision for those claims:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## B. Fourth Amendment Claims

Petitioner argues the State violated his Fourth Amendment rights by introducing evidence obtained from a warrantless blood test unsupported by probable cause. (Petition at 6–7, 11–12; Addendum at 1–2, ECF No. 1-2.) The Fourth Amendment right against unreasonable searches and seizures "has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]," and therefore, "it is

enforceable against them by the . . . sanction of exclusion [of the evidence] . . . ." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  However, when a state prisoner has "been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts," the prisoner "may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 489, 494 (1976).

This approach "emphasizes the integrity of the state court proceedings and assumes that the state courts will be as diligent as the federal courts in protecting fourth amendment rights." *Palmigiano v. Houle*, 618 F.2d 877, 882 (1st Cir. 1980).  Accordingly, the First Circuit has explained:

> Although a federal habeas court may inquire into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims, its inquiry ordinarily ends upon a determination that those procedures pass muster.  Put another way, "a full and fair opportunity" to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations.  So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims.  Hence, the mistaken outcome of a state court suppression hearing, standing alone, cannot be treated as a denial of the opportunity fully and fairly to litigate a Fourth Amendment claim (and, thus, cannot open the door to federal habeas review).

*Sanna v. Dipaolo*, 265 F.3d 1, 8–9 (1st Cir. 2001) (internal citations omitted).

Petitioner does not challenge the state procedures that govern the prosecution of his Fourth Amendment challenge.  Indeed, the record establishes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.  Accordingly, under *Stone*,

Petitioner is not entitled to federal habeas relief based on his arguments regarding the warrantless blood test.

## C.    Evidentiary Rulings

Petitioner contends that the state court erred by allowing into evidence certain documents police collected from the truck cab after the accident, which documents included Petitioner's logbook.  Petitioner contends the documents constitute inadmissible hearsay. (Petition at 8.)  The Superior Court allowed the documents into evidence as party admissions because Petitioner evidently signed the documents.  Petitioner raised the issue on appeal, and the Law Court agreed that the documents were admissions because Petitioner was required by law to maintain an accurate logbook and supporting records for inspection. *Weddle*, 2020 ME 12 at ¶ 1 n.2, 224 A.3d at 1038.

Petitioner now argues (without legal support) that the documents can only be considered admissions if he intended to provide them to police, and he did not intend for the police to obtain the documents.  Petitioner also asserts that the state's expert witness was not qualified to testify and that a defense expert should have been given more opportunity to challenge the State's expert's opinions. (Addendum at 3.)  He also contends that additional inquiry should have been permitted regarding two witnesses who testified about their observations during the accident. (*Id.* at 7.)[8]  Petitioner's arguments necessarily fail because federal courts are not authorized to review state courts' decisions on state

---

[8] Petitioner does not identify the limits he now challenges or describe the additional testimony the witnesses would have provided.  A review of the transcript of their testimony does not show any objections or limitation on the scope of cross-examination.  (Transcript for January 23, 2018, at 57–62, 71.)

evidentiary rules. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

In his reply memorandum, Petitioner claims to raise a federal due process claim rather than a state evidentiary argument, but the different characterization of the argument does not alter the result. The argument is likely procedurally defaulted because Petitioner did not fairly present the federal issue to each available state court during his state postconviction proceeding. Even if he had exhausted the claim, Petitioner "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). For a state evidentiary ruling to create a cognizable issue on federal habeas review, it must be "'so arbitrary or capricious" that it "results in a fundamentally unfair trial" and, therefore, constitutes an independent due process violation. *Lyons v. Brady*, 666 F.3d 51, 55 (1st Cir. 2012). Petitioner's vague arguments do not establish any error or unfairness,[9] and even if Petitioner proved some error, Petitioner's argument would fail to demonstrate that the entire trial was fundamentally unfair.

The only other potential federal claim is Petitioner's argument that his expert was not permitted to sufficiently "confront" the State's expert witness. (Addendum at 3.)

---

[9] For example, Petitioner argues that the state's expert was not qualified. In his reply memorandum, Petitioner clarified that he was referring to Karen Simone, but the only argument or explanation he provided about the witness's credentials or experience is that the witness had training from online courses, which, even if true, would not disqualify the witness. According to the witness's undisputed testimony, she earned a doctorate in pharmacology, had a faculty appointment at Tufts University, and had twenty years of experience as a clinical toxicologist at the time of trial. (Transcript for January 25, 2018, at 125–27.)

Petitioner conceivably could have intended to invoke the Confrontation Clause of the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

Any potential Confrontation Clause argument is likely procedurally defaulted because the use of the word "confront," without more, did not fairly present the federal issue to the state court during the state postconviction proceeding. Even if Petitioner had exhausted a Confrontation Clause claim, the argument would fail on the merits. The federal right to confront witnesses prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination," *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), and protects "the right to conduct reasonable cross-examination," *Olden v. Kentucky*, 488 U.S. 227, 231 (1988), although trial courts "retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The state's expert witnesses appeared at trial and Petitioner was permitted extensive cross-examination. Because Petitioner seeks to challenge a restriction the Superior Court placed on the scope of direct examination of one of his witnesses, rather than the scope of cross-examination of one of the State's witnesses, he has not established a violation of the Confrontation Clause.[10]

---

[10] As discussed above, the issue regarding a restriction on the scope of defense expert testimony sounds in due process, not witness confrontation. The Due Process Clause can limit a state court's ability to arbitrarily

In sum, Petitioner is not entitled to habeas relief because he failed to show that the state court's decisions on the evidentiary issues were contrary to or an unreasonable application of Supreme Court precedent.

## D.    Sufficiency of the Evidence

Petitioner argues there was insufficient evidence to support the convictions. (Addendum at 3). The due process guarantee of the Fourteenth Amendment requires "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). On such a claim, "the proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Morgan v. Dickhaut*, 677 F.3d 39, 47 (1st Cir. 2012) (internal quotation marks omitted). "In a federal habeas proceeding, review of a sufficiency claim is doubly deferential: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Berila v. Watson*, No. 24-3188, 2024 WL 4023843, at *2 (6th Cir. July 12, 2024).[11]

---

restrict the scope of direct examination of a rebuttal witness, but the Superior Court noted that the only limitation on the defense expert's testimony was the inability to opine directly on the jury's ultimate determination of whether the chemicals in his blood made Petitioner "impaired" at the time of the accident. Petitioner has not shown that limitation rendered the entire trial fundamentally unfair or otherwise conflicted with any Supreme Court case.

[11] The petition also refers to "actual innocence" in addition to sufficiency of the evidence, but in the circumstances here, "actual innocence" is not an independent basis for habeas relief and serves only as a potential gateway to consideration of a defaulted claim. *See Herrera v. Collins*, 506 U.S. 390, 400–02

The Law Court determined that the Superior Court correctly denied Petitioner's motion for a judgment of acquittal, which motion raised essentially the same issue Petitioner raises here. *Weddle*, 2020 ME 12, ¶ 1 n.2, 224 A.3d at 1038. The record establishes that the state court conclusion was not contrary to or an unreasonable application of *Jackson* or its progeny. Although Petitioner asserts that unfavorable evidence was unreliable, such as the blood alcohol test results, he provides no credible support for his argument. For example, Petitioner alleges that police officers and prosecutors "manipulated" the blood test evidence, but he provides no explanation or factual support that would make the argument plausible.

Petitioner also alleges that there was insufficient evidence for one of the eight motor vehicle rule violations because although the evidence showed that he had purchased fuel at a specific time, it did not prove that he was on duty at the time, contrary to his logbook entries. (Petition at 10). The argument lacks merit because the reasonable doubt standard does not require the kind of mathematical proof Petitioner evidently contemplates. A reasonable jury could infer that Petitioner was on duty at the time based on the receipts and other testimony. The state court's decision was not contrary to an unreasonable application of *Jackson* or its progeny.

**E.    Prosecutorial Misconduct and *Brady* Claims**

Petitioner argues police officers were untruthful while testifying at trial, the prosecutors and police officers manipulated the blood test evidence, and the prosecution

(1993). In any event, Petitioner has not produced any new evidence that would make it more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.

failed to disclose exculpatory evidence regarding the dangerousness of the portion of the roadway on which the accident occurred. (Addendum at 3–4.) The right to due process prevents government actors from "deliberately fabricating evidence." *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004). While there is no general right to discovery in a criminal case, the suppression of evidence favorable to the defendant violates due process "where the evidence is material either to guilt or punishment," *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a category that includes impeachment evidence of key government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The state court noted that Petitioner's claims were procedurally barred because he did not raise the issues at trial or on appeal. The state court also rejected Petitioner's assertions because his testimony was not believable, and he had not produced any evidence to support his assertions. Petitioner has not pointed to any evidence in the record to rebut the state court's conclusion. Petitioner provided no explanation or factual support to establish that the fabrication allegations are plausible, and despite having the opportunity to present the allegedly exculpatory traffic evidence, Petitioner never did so. Other evidence he cites to support his *Brady* claim, such as the fact that he passed a physical examination several weeks prior to the accident, was evidently known to Petitioner and thus were not suppressed by the State.

17

In sum, Petitioner has not shown that the state court decisions were contrary to or unreasonable applications of *Brady* or other Supreme Court cases.

## F.    Ineffective Assistance Claims

Petitioner asserts that his attorneys provided ineffective assistance when they failed to: (1) object to police officers testifying as to what Petitioner said in the hospital while "misconstruing" what Petitioner intended as negative answers to instead be affirmative answers; (2) argue that Petitioner's prescription medication was under the legal limit; (3) obtain a traffic study or introduce expert testimony on the road conditions; and (4) file a sentence appeal as planned. (Addendum at 6–7, 12.)

Petitioner already received full relief on the sentence appeal issue when his right to file an appeal was reinstated and he litigated his challenge to the sentence before the Law Court. There does not appear to be any additional relief on that issue for the state court or this Court to consider.

The state court supportably determined that the other issues lack merit. Petitioner failed to establish deficient performance by counsel on those issues. Petitioner does not allege a meritorious basis for an objection to the officer's testimony; he merely disagrees (on some basis that he does not explain) with the officers' interpretation of a "yes" answer to the officers' question. The record shows that there was no dispute at trial that Petitioner's use of prescription medication was not itself illegal, and counsel repeated at various times that the other drugs in question were prescribed to him. Petitioner does not point to any argument from the prosecutor or instruction from the state court that implied that Petitioner's use of the medication was illicit or that the level in his blood was itself

18

enough to establish culpability. Because the traffic pattern changed before trial, and because Petitioner never pursued or introduced into the postconviction record any traffic study, there is nothing in the record beyond speculation regarding the evidence that further investigation would have yielded.

Even if Petitioner could establish deficient performance, none of the three issues would create the necessary prejudice given the abundant evidence of guilt, including that he admittedly consumed alcohol on duty, his blood tested above the legal limit, he was speeding, and he was responsible for ensuring the load on the truck was secured properly. Accordingly, the ineffective assistance claims fail, and the state court decision was not contrary to or an unreasonable application of *Strickland* or its progeny.

## G.    Length of Sentence

Petitioner contends the twenty-five-year sentence was unconstitutional under the Maine and United States constitutions. (Addendum at 8–10.)[12] Because questions of state law are not cognizable on habeas review, *see Estelle*, 502 U.S. at 67–68, there is no basis here for Petitioner to challenge the Law Court's ruling in the sentencing appeal regarding the proportionality of the sentence under the state constitution and statutes. "In noncapital cases, the Eighth Amendment does not require a precise calibration of crime and punishment. Rather, at most, the Eighth Amendment gives rise to a narrow proportionality principle, forbidding only extreme sentences that are significantly disproportionate to the

---

[12] Petitioner did not explicitly cite the United States Constitution in his petition, but he did so in his reply memorandum.

underlying crime." *United States v. Rivera-Ruperto*, 852 F.3d 1, 17 (1st Cir. 2017) (internal quotations and citations omitted).

Although Petitioner emphasizes that his crime was unintentional and the length of the sentence was the longest for any manslaughter case in Maine, the Law Court reasonably highlighted the presence of aggravating factors, such as the fact that Petitioner caused two deaths, was speeding, was intoxicated, and had an extensive relevant criminal history, including twelve prior OUI convictions and eleven prior speeding violations. *Weddle*, 2024 ME 26, ¶¶ 6, 13–14, 314 A.3d at 238–40. Petitioner cannot show that the state court's decision was contrary to or unreasonable application of the Supreme Court's precedent because the Supreme Court has several times upheld comparable and longer sentences for crimes of lesser gravity than Petitioner's. *See Ewing v. California*, 538 U.S. 11 (2003) (rejecting a challenge to a sentence of 25 years to life for the theft of a few golf clubs under a three-strikes recidivist sentencing scheme); *Harmelin v. Michigan*, 501 U.S. 957 (1991) (rejecting a challenge to a sentence of life without parole for possessing a large quantity of cocaine); *Hutto v. Davis*, 454 U.S. 370, (1982) (per curiam) (rejecting a challenge to a sentence of 40 years for marijuana possession and distribution); *Rummel v. Estelle*, 445 U.S. 263 (1980) (rejecting a challenge to a sentence of life with the possibility of parole for a third nonviolent felony, the crime of obtaining money by false pretenses). The Eighth Amendment claim fails, therefore, and the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases.  I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of March, 2025.